EXHIBIT 3

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 06-81105-Civ-Hurley/Hopkins

SENSORMATIC ELECTRONICS
CORPORATION,

      Plaintiff,

vs.

THE TAG COMPANY US LLC and
PHENIX LABEL COMPANY,

      Defendant.

_____/

### PLAINTIFF SENSORMATIC ELECTRONICS CORPORATION'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-41) TO DEFENDANT THE TAG COMPANY US LLC

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Sensormatic Electronics Corporation ("Sensormatic") submits to Defendant The TAG Company US LLC ("TAG") the following requests for production of documents and things. Responses to these requests shall be served upon Rebecca LeGrand, Williams & Connolly LLP, 725 Twelfth Street, N.W., Washington, DC 20005, within 30 days of service of these requests. Copies shall be produced as kept in the ordinary course of business, including labeling as to the source of the documents, as required by Federal Rule of Civil Procedure 34.

## I.    DEFINITIONS

1.    As used herein, the terms "Plaintiff" and "Sensormatic" mean Sensormatic Electronics Corporation and any of its past or present officers, directors, parents, subsidiaries, affiliates, investors, shareholders, employees, agents, contractors, predecessors and successors, consultants, agents, accountants, or any related entity or individual.

2.    As used herein, the terms "you," "your," "yours," and "TAG" mean The TAG Company US LLC and any of its past or present officers, directors, parents, subsidiaries, affiliates, investors, shareholders, employees, agents, contractors, predecessors and successors, consultants, agents, accountants, or any related entity or individual.

3.    As used herein, the term "Phenix" means Phenix Label Company and any of its past or present officers, directors, parents, subsidiaries, affiliates, investors, shareholders, employees, agents, contractors, predecessors and successors, consultants, agents, accountants, or any related entity or individual.

4.    As used herein, the term "Defendants" means The TAG Company US LLC and/or Phenix Label Company (collectively or individually) and any of their past or present officers, directors, parents, subsidiaries, affiliates, investors, shareholders, employees, agents, contractors, predecessors and successors, consultants, agents, accountants, or any related entity or individual.

5.    As used herein, the term "document" shall be interpreted in the most comprehensive and inclusive sense in light of the Federal Rule of Civil Procedure 34 and includes the original and any non-identical copies (including those with any notations, marks, alterations, comments, or other changes) of any written, typed, printed or otherwise recorded matter, however produced or reproduced, of every kind and description, in whatever form (e.g., draft and final version), that are in TAG's actual or constructive possession, custody, care, or control, including but not limited to all writings, devices, components, computer data, computer generated documents, computer disks or data tapes, electronically stored information, or any other writings or tangible things which constitute or contain matters within the scope of Rule 34 of the Federal Rules of Civil Procedure or Rule 1001 of the Federal Rules of Evidence. The

documents requested include all attachments to the specifically described documents and all other material that originally accompanied them.

6.     As used herein, the term "communication" means any transmission of information from one person to another, including, without limitation, by personal meeting, telephone, facsimile, electronic transmission, including electronic mail, and teleconference.

7.     As used herein, the term "thing" shall be interpreted in the most comprehensive and inclusive sense in light of Federal Rule of Civil Procedure 34 and means any physical article responsive to the request that is not a document and which is in the possession, custody, or control of TAG.

8.     As used herein, the terms "person" and "entity" mean any natural person and any other cognizable entity, including, without limitation, corporations, proprietorships, partnerships, joint ventures, joint marketing entities, businesses, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, and orders.

9.     As used herein, the term "employee" means any director, trustee, officer, employee, agent, consultant, partner, corporate parent, subsidiary, affiliate, or servant of the designated entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

10.    As used herein, the term "representative" means any consultant, expert, attorney, contractor, or other person engaged by the designated entity to perform some task or assignment for the entity.

11.    As used herein, the phrase "relate to" shall be understood to apply if the document evidences, mentions, discusses, constitutes, concerns, relates, refers to (directly or indirectly), or in any other way pertains to the subject matter of the request.

12.     As used herein, the terms "and" as well as "or" shall be construed either disjunctively or conjunctively, and references shall be construed either as singular or plural, as necessary to bring within the scope of these requests any information or documents and things that might otherwise by construed to be outside their scope.

13.     As used herein, the term "all" shall be construed to mean all or any, and the term "any" shall be construed to mean all or any.

14.     As used herein, the term "Defendants' AM EAS labels" shall be construed to include any product, component of a product, or potential product or component of a product designed or marketed by Defendants, any entity related to Defendants, or any representative thereof, as an acousto-magnetic ("AM") Electronic Article Surveillance ("EAS") label including but not limited to EAS labels sold under the name Series 58.

15.     As used herein, the term "Sensormatic's AM EAS labels" shall be construed to include any product, component of a product, or potential product or component of a product designed or marketed by Sensormatic as an acousto-magnetic Electronic Article Surveillance label.

16.     As used herein, the phrase "Patents-in-Suit" shall be construed to mean United States Patent Nos. 5,949,334; 6,020,817; 5,469,140; 5,729,200; and 6,181,245.

17.     As used herein, the phrase "prior art" encompasses the subject matter described in 35 U.S.C. §§ 102 and 103.

18.     As used herein, the term "prosecution file" means the patent application and the entire written record of a patent's prosecution, including but not limited to any communication between the relevant patent office and the applicant or its representative, any prior art of record, and any related documentation.

4

19. As used herein, the terms "test" and "testing" shall be construed to include but not be limited to any test, analysis, evaluation, comparison, study, experiment, or trial for any purpose, whether published or unpublished.

20. As used herein, the term "label" shall be construed to mean an electronic article surveillance ("EAS") marker that includes as components a magnetostrictive element and a biasing element, and that can be secured to articles to be protected from theft.

21. As used herein, the term "magnetostrictive element" shall be construed to mean the element of an AM EAS label that mechanically resonates when exposed to an appropriate alternating electromagnetic field .

22. As used herein, the terms "bias element" or "biasing element" shall be construed to mean the element of an AM EAS label that provides the requisite bias field for the magnetostrictive element.

## II. INSTRUCTIONS

1. These requests apply to all documents and things in your possession, custody, or control, regardless of the location of such documents and things.

2. Each request shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains to only a portion of a request, or a word, phrase, or clause contained within a request, you are required to state your objection to that portion only and to respond to the remainder of the request, using your best efforts to do so. Your responses and the objections, if any, are to be signed by the attorney making them.

3.      The original and each non-identical copy of each document or thing requested herein is to be produced.  If the original or original carbon copy is not in your possession, custody, or control, a full copy thereof is to be produced.

4.      If TAG has no documents responsive to a particular request, it is requested that it so state.

5.      Pursuant to Federal Rule of Civil Procedure 34(b), each document and thing produced in response hereto is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such documents or things may be organized or separated.

6.      If you assert that any document or thing required to be produced is privileged or otherwise protected from discovery, then as to such documents and things for which a claim of privilege or attorney work product is made, you are requested to supply the following information:

(a)      The place, date, and manner of recording, creating, or otherwise preparing the document or thing;

(b)      the name and organizational position, if any, of each sender of the document or thing;

(c)      the name and organizational position, if any, of each recipient or custodian of the document or thing;

(d)      the name and organizational position, if any, of each person (other than stenographic or clerical assistants) participating in the preparation or creation of the document or thing;

(e)     the name and organizational position, if any, of each person to whom the contents of the document or thing or any portion thereof have heretofore been communicated by copy, exhibition, reading, or summarization;

(f)     the general subject matter of the document, sufficient to identify the document; and

(g)     a statement of the basis on which privilege or attorney work product is claimed regarding each document or thing and whether or not its contents are limited solely to legal advice or information provided for the purpose of securing legal advice.

7.      If in responding to any of these requests you encounter any ambiguity in construing the request or any definition or instruction relevant to the request, set forth the matter deemed ambiguous and the construction selected or used in responding to the request.

8.      To the extent provided by Federal Rule of Civil Procedure 26(e), the requests propounded herein shall be deemed continuous up to and following the trial of this proceeding such that any document or thing requested herein which is either discovered by you or comes within your possession, custody, or control subsequent to your initial production, but before the final conclusion of this case, should be produced in a supplemental production immediately upon its discovery or receipt by you.

## III.    DOCUMENTS AND THINGS TO BE PRODUCED

1.      Documents sufficient to identify each type of AM EAS label developed, manufactured, distributed, used, marketed, licensed, sold, and/or offered for sale by TAG.

2.  Documents and things relating to the specifications, capabilities, and performance of each type of AM EAS label developed, manufactured, distributed, used, marketed, licensed, sold, and/or offered for sale by TAG.

3.  Documents and things relating to the development of Defendants' AM EAS labels, including documents and things relating to:

      (a)    the initial design of each type of Defendants' AM EAS label;

      (b)    any change or proposed change to the design of Defendants' AM EAS labels;

      (c)    the past, present, and future design of Defendants' AM EAS labels;

      (d)    any description or depiction of Defendants' AM EAS labels;

      (e)    any description or depiction of any feature or property of Defendants' AM EAS labels;

      (f)    TAG's expenditure of time, effort, or money toward the development of Defendants' AM EAS labels.

4.  Documents and things relating to the use of Defendants' AM EAS labels, including but not limited to all manuals and instructions.

5.  Documents and things sufficient to show the literature and/or other packaging included with Defendants' AM EAS labels.

6.  Five representative rolls of Defendants' AM EAS labels marketed as TAGAM-22K and five representative rolls of Defendants' AM EAS labels marketed as TAGAM-26K in their original packaging accompanied by documents sufficient to show the manufacturing date and manufacturing location for each label roll and the source and composition of the resonator and bias materials used in each label roll. Label rolls should be produced from at least three different manufacturing dates. If Defendants' AM EAS labels have been manufactured at more

than one location, or using more than one manufacturing process, then at least one roll should be produced from each location or manufacturing process. If Defendants' AM EAS labels have been manufactured using different resonator or bias materials, then at least one roll should be produced using each different resonator or bias material (including different alloys, different alloy suppliers, and/or different alloy processing methods).

7. Documents and things relating to Sensormatic's AM EAS labels, including documents and things relating to:

>   (a) any comparison of Sensormatic's AM EAS label to any other AM EAS label;
>
>   (b) any analysis or reverse-engineering of Sensormatic's AM EAS labels;
>
>   (c) any evaluation of Sensormatic's AM EAS labels with respect to TAG's commercialization or marketing of AM EAS labels;
>
>   (d) any description or depiction of Sensormatic's AM EAS labels;
>
>   (e) any description or depiction of any feature or property of Sensormatic's AM EAS labels.

8. Documents relating to the Patents-in-Suit, including documents relating to:

>   (a) any analysis or opinion relating to infringement or non-infringement of the Patents-in-Suit;
>
>   (b) any analysis or opinion relating to the validity or invalidity of the Patents-in-Suit;
>
>   (c) any analysis or opinion relating to the enforceability or unenforceability of the Patents-in-Suit;
>
>   (d) any patents, patent applications, or prosecution files relating to the Patents-in-Suit;
>
>   (e) TAG's knowledge or awareness of the Patents-in-Suit;

(f) any communications between TAG and any other party relating to the Patents-in-Suit.

9. Documents and things relating to TAG's efforts or plans to design-around the Patents-in-Suit.

10. Documents relating to prior art to the Patents-in-Suit, including documents relating to or resulting from any search for prior art to the Patents-in-Suit.

11. Documents relating to any communications between TAG and Phenix regarding the manufacture, sale or offer to sell, importation, or use of Defendants' AM EAS labels, including documents relating to any contract, license, indemnity, or other agreement.

12. Documents relating to any communications between TAG and any other party regarding the manufacture, sale or offer to sell, importation, or use of Defendants' AM EAS labels, including documents relating to any contract, license, indemnity, or other agreement.

13. Documents relating to any communications between TAG and any other party regarding Sensormatic's AM EAS labels.

14. Documents and things relating to any tests, measurements, or analysis conducted by or at the request of TAG regarding the nature, characteristics, specifications, features, and quality of Defendants' AM EAS labels, including but not limited to the following:

(a) all documents relating to the bias-field-dependent resonant frequency characteristic of Defendants' AM EAS labels and/or any of its components;

(b) all documents relating to the harmonic frequencies produced in an alternating electromagnetic field by Defendants' AM EAS labels and/or any of its components;

(c) all documents relating to the deactivation-field-dependent resonant-frequency-shift characteristic of Defendants' AM EAS labels and/or any of its components;

(d) all documents relating to the coercivity, magnetomechanical coupling factor, hysteresis loop characteristics, or other magnetic properties of any components of Defendants' AM EAS labels;

(e) all documents relating to tests of the magnetization of Defendants' AM EAS labels and/or any of its components;

(f) all documents relating to tests of the demagnetization of Defendants' AM EAS labels and/or any of its components;

(g) all documents relating to tests of the electrical properties of Defendants' AM EAS labels and/or any of its components, including but not limited to resonance frequency and amplitude;

(h) all documents relating to tests of the detection performance of Defendants' AM EAS labels and/or any of its components;

(i) all documents relating to tests of the deactivation performance of Defendants' AM EAS labels and/or any of its components.

15. Documents relating to any communications between TAG and Summit Consulting Group regarding any testing or analysis of Defendants' AM EAS labels and/or Sensormatic's AM EAS labels.

16. Documents and things authored by, reflecting the work of, or provided to Steve Mankin regarding Defendants' AM EAS labels and/or Sensormatic's AM EAS labels.

17. Documents relating to any patents or patent applications applied for by TAG, assigned to or by TAG, or licensed to or by TAG, that relate to any AM EAS product, including

documents relating to any royalties or payments made by or to TAG, any assignment, license, or other agreements, and/or any patents, patent applications, or prosecution files.

18.    Documents and things relating to all processes employed in the production, manufacture, fabrication, assembly, preparation, treatment, magnetization, and/or activation of Defendants' AM EAS labels.

19.    Documents and things relating to all processes employed in the production, manufacture, fabrication, assembly, preparation, annealing, tempering, treatment, magnetization, and/or activation of the magnetostrictive element of Defendants' AM EAS labels.

20.    Documents and things relating to all processes employed in the production, manufacture, fabrication, assembly, preparation, annealing, tempering, treatment, magnetization, and/or activation of the bias element of Defendants' AM EAS labels.

21.    Documents and things sufficient to identify the composition of all materials contained in Defendants' AM EAS labels and/or its components, including but not limited to the composition of each alloy (including relative proportions of each element) contained in Defendants' AM EAS labels and/or its components.

22.    Documents relating to communications between TAG and any other party regarding purchase, acquisition, processing, and/or treatment of materials contained in Defendants' AM EAS labels and/or its components.

23.    Documents relating to communications between TAG and suppliers or potential suppliers of the magnetostrictive element of Defendants' AM EAS labels.

24.    Documents relating to communications between TAG and suppliers or potential suppliers of the bias element of Defendants' AM EAS labels.

12

25.     Documents relating to the promotion, advertising, marketing, or planned marketing or sale of Defendants' AM EAS labels, including examples of all advertisements, brochures, catalogs, or other sales or promotional materials, and all drafts of such materials.

26.     Documents relating to sales projections or marketing plans for Defendants' AM EAS labels.

27.     Documents relating to the actual sales volume of Defendants' AM EAS labels in the United States or otherwise, including but not limited to documents sufficient to identify each purchaser of Defendants' AM EAS labels and the volume of each sale (units and dollars) made in each month to each purchaser.

28.     Documents relating to the distribution of Defendants' AM EAS labels, including but not limited to invoices or lists of those in the United States or otherwise who have received Defendants' AM EAS labels.

29.     Documents reflecting or relating to factors considered by customers in choosing to use Defendants' AM EAS labels.

30.     Documents reflecting or relating to customer testimonials, complaints, feedback, and/or comments related to Defendants' AM EAS labels.

31.     Documents relating to public statements and announcements by TAG regarding Defendants' AM EAS labels and/or Sensormatic's AM EAS labels.

32.     Documents relating to the publication of datasheets and specifications regarding Defendants' AM EAS labels.

33.     Documents comprising organizational charts relating to the departments, groups, and individuals involved in the research and development, production, marketing, and distribution of Defendants' AM EAS labels.

34.     Documents sufficient to identify officers and employees of TAG having responsibility for the research and development, design, testing, marketing, and production of Defendants' AM EAS labels.

35.     Documents relating to any document retention policies and/or document destruction policies of TAG in effect since January 1, 2000.

36.     Documents and things relating to the denials in paragraphs 11-65 of Defendants' Second Amended Answer.

37.     Documents and things relating to Affirmative Defenses 1-22 of Defendants' Second Amended Answer.

38.     Documents and things relating to Claim 1 of Defendants' Second Amended Counterclaims.

39.     Documents and things relating to Claim 2 of Defendants' Second Amended Counterclaims.

40.     To the extent not produced in response to any other request, all documents and things identified by TAG in response to any Sensormatic interrogatory.

41.     To the extent not produced in response to any other request, all documents and things reviewed or prepared in connection with this case by any person whom Defendants may or will call as an expert witness at trial.

Dated: March 8, 2007

Stephen B. Gillman (196734)
*sgillman@shutts-law.com*
SHUTTS & BOWEN, LLP
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305)358-6300
Facsimile: (305)381-9982

and

Bruce R. Genderson (*pro hac vice*)
*bgenderson@wc.com*
David C. Kiernan (*pro hac vice*)
*dkiernan@wc.com*
George A. Borden (*pro hac vice*)
*gborden@wc.com*
Rebecca S. LeGrand (*pro hac vice*)
*rlegrand@wc.com*
Eric K. Chiu (*pro hac vice*)
*echiu@wc.com*
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Attorneys for Plaintiff Sensormatic
Electronics Corporation

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing were served by both

electronic mail and Federal Express on March 8, 2007 on all counsel of record listed below.

_(signature)_

Rebecca S. LeGrand (*pro hac vice*)

Brian Dean Abramson
*babramson@lfiplaw.com*
LOTT & FRIEDLAND, PA
355 Alhambra Circle, Suite 1100
PO Drawer 141098
Coral Gables, FL 33134-1098
Telephone: (305)448-7089
Facsimile: (305)446-6191

Attorney for Defendants The Tag Company
US LLC and Phenix Label Company

Robert R. Waters
Jason A. Poling
Olen L. York, III
Benjamin S. Shively
Enrico A. Mazzoli
*rrwaters@waterslawoffice.com*
WATERS LAW OFFICE, PLLC
10503 Timberwood Circle
Louisville, KY 40223
Telephone: (502)425-2424
Facsimile: (520)425-9724

Attorneys for Defendants The Tag Company
US LLC and Phenix Label Company